# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> ISAIAS RODRIGUEZ-RAMIREZ and JOSE URIEL CEJA-RODRIGUEZ, <br><br> Defendants. | MEMORANDUM DECISION <br> AND ORDER <br><br><br> Case No. 2:11-cr-944 |

Defendants Jose Uriel Ceja-Rodriguez and Isaias Rodriguez-Ramirez move the court to suppress all evidence obtained from a search that was conducted under a warrant that the Defendants claim was invalid. (Dkt. No. 98.) For the reasons stated below, the court GRANTS their request.

## BACKGROUND

On October 26, 2011, a confidential source agreed to cooperate with police officers after the officers discovered him in the midst of a drug transaction. (Tr. of Evid. Hr'g 4-5, Dec. 4, 2012, Dkt. No. 133.) The informant agreed to meet with a man named Chalmes to set up a drug purchase. (*Id.* at 6.) Before this meeting occurred, the officers placed a wire in the informant's car so that they could overhear the conversations that took place between Chalmes and the informant. (*Id.*) The officers were able to hear Chalmes tell the informant that he was meeting with some other people at a residence in Magna and that Chalmes's supplier was bringing in two

pounds of methamphetamine from California.  (*Id.* at 73.)  The officers also overheard one side of a telephone call that Chalmes made to arrange a drug purchase of four ounces of methamphetamine.  (*Id.* at 45, 73.)  Chalmes and the informant then drove to a strip mall parking lot in Magna, which contained a Beto's restaurant.  (*Id.* at 6-7.)

At approximately 12:30 a.m., Chalmes and the informant arrived at the parking lot.  The officers saw Chalmes leave the informant's car and enter the Beto's restaurant.  (*Id.* at 7, 20.)  Shortly thereafter, a tan Nissan Altima pulled up to the drive-through window at the Beto's, at which point Chalmes left the restaurant and got into the Altima.  (*Id.*)  The Altima drove a short distance in the parking lot before Chalmes got out and returned to the informant's car.  (*Id.* at 7-8.)  Chalmes and the informant left the parking lot and a short time later they were pulled over for an alleged traffic violation.  At that time, police officers found four ounces of methamphetamine in the informant's car.  (*Id.* at 8.)

Meanwhile, Agent James Kortright followed the Altima when it left the parking lot and trailed it to a residence on South Bronco Circle in Magna, Utah.  Agent Kortright saw the driver of the Altima park the car in the driveway and enter the house through the garage.  (*Id.* at 9-10.)  Agent Kortright prepared an affidavit and proposed search warrant, which was then reviewed by both his supervisor and a prosecutor.  (*Id.* at 54-56.)  He submitted the affidavit to Judge Vernice Trease of the Third District Court of the State of Utah, who issued a search warrant.  As a result of incriminating evidence discovered during the search of the home at South Bronco Circle, the Defendants were charged with the crimes of which they now stand accused.

On December 4, 2012, the court held an evidentiary hearing to determine whether the search warrant was supported by probable cause.  The court found that such a hearing was

merited under the Supreme Court's decision in *Franks v. Delaware*, in which the Court held that a defendant is entitled to an evidentiary hearing to determine if a warrant was issued in reliance on a deliberately or recklessly false statement in an affidavit when the defendant is able to make a substantial preliminary showing that the affiant intentionally or with reckless disregard for the truth omitted material information from, or included false information in, the affidavit. *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978); *see also United States v. Tisdale*, 248 F.3d 964, 973 (10th Cir. 2001). Here, the court found that the Defendants had made the required threshold showing due to the inclusion of the following statements in the affidavit: "Affiant has watched the listed premises and it appears that the occupants are selling controlled substances at night. Affiant, through controlled purchases, has purchased narcotics from the listed suspect(s) at night." The United States admits that these statements were not true and that they were "inadvertently not completely modified from a former affidavit that was used for formatting the affidavit in the present case." (Mem. in Opp'n, at 4, Dkt. No. 118; *see also* Tr. at 24-29.)

The Defendants argue that, when this language is removed, the affidavit lacks probable cause to support a search warrant and the evidence that the police officers discovered in the home at South Bronco Circle should be suppressed.

ANALYSIS

The Fourth Amendment protects the "right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. Amend. IV. Generally, a police officer must obtain a warrant before entering and searching a person's home. *Payton v. New York*, 445 U.S. 573, 586 (1980) ("searches and seizures inside a home without a warrant are presumptively unreasonable"). A search warrant must be based on a valid

3

affidavit:

> It is a violation of the Fourth Amendment for an affiant to knowingly and intentionally, or with reckless disregard for the truth, make a false statement in an affidavit. Where a false statement is made in an affidavit for a search warrant, the search warrant must be voided if the affidavit's remaining content is insufficient to establish probable cause. This prohibition likewise applies to intentional or reckless omissions of material facts, which, if included, would vitiate probable cause.

*United States v. Basham*, 268 F.3d 1199, 1204 (10th Cir. 2001) (citing *Franks*, 438 U.S. at 171-72).

### A. Sufficiency of the Affidavit

When making a *Franks* challenge, the defendant has the burden to establish by a preponderance of the evidence "that the false statement was included in the affidavit by the affiant 'knowingly and intentionally, or with reckless disregard for the truth.'" *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997) (citing *Franks*, 438 U.S. at 155-56). The defendant must then also prove that "the false statement was necessary to the finding of probable cause." *Id.* (quotations omitted). If the defendant proves both, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.*

Here, the Defendants argue that Agent Kortright made a number of misrepresentations and omissions in his affidavit. Most importantly, and as discussed above, Agent Kortright mistakenly included two sentences stating that he had watched the house and had made a number of controlled purchases from the suspect. Agent Kortright testified that he had written those sentences for a previous case and had forgotten to remove them from the affidavit in this case. (Tr. at 57.) The United States admits that these statements are false. Agent Kortright had not

been to the house at South Bronco Circle before, and he had not observed any suspected drug transactions involving the driver of the Nissan Altima other than the encounter with Chalmes and that had happened that night. Even though the affidavit was reportedly reviewed by Agent Kortright, his supervisor, and a prosecutor, no one noticed this substantial error.

The Defendants contend that Agent Kortright's failure to delete the false statements was the result of an intentional attempt to mislead the judge who reviewed the warrant application. But the court need not decide this question because it finds that, at the very least, this considerable mistake was made with reckless disregard for the truth. The United States's failure to notice and rectify such an obvious error in the affidavit despite three levels of review is deeply troubling to the court. And while the United States argues that the offending sentences were included in the "no-knock" section of the affidavit and not the section detailing probable cause, the court is not persuaded that the reviewing judge failed to consider these statements in her decision to issue a search warrant. The affidavit is only three pages long and the court looks at the entire affidavit to determine probable cause. *See Hackney, Inc. v. McLaughlin*, 895 F.2d 1298, 1299-1300 (10th Cir. 1990). As a result, the court strikes these sentences from affidavit and must determine whether these statements were necessary to find probable cause.

The Defendants make a number of additional arguments about misstatements and omissions in the affidavit. For instance, the Defendants contend that the affidavit says that Chalmes called a "Hispanic male" to arrange the drug delivery, even though it was not possible for the officers to hear the voice of the person on the other end of the phone. The Defendants also assert that Agent Kortright omitted a number of details about the informant that would have damaged the informant's credibility, including his recent criminal history and the leniency that he

5

was granted in exchange for his cooperation. Because the court focuses its inquiry on the effect of the clearly erroneous statements discussed above on the determination of probable cause to search the house at South Bronco Circle, the court need not address whether these additional statements and omissions were material, or if they were made knowingly and intentionally or with reckless disregard for the truth.

But the court is concerned about one omission. When the officers ran the license plate of the tan Nissan Altima, they discovered that it was registered to an individual living in a different zip code than the zip code for the house on South Bronco Circle. Agent Kortright admitted in his testimony that this information was inconsistent with an inference that the Altima was connected to the Magna house in any long-term way. (Tr. at 34-35.) But Agent Kortright did not include any information about the vehicle registration in the affidavit for the search warrant. (*Id.* at 35.) Police officers are not required to include every piece of evidence that may cast some doubt on an officer's assertion of probable cause, but given the officers' lack of knowledge here about the relationship between the house at South Bronco Circle and the driver of the Altima, the court finds that "a reasonable person would have known that [the information obtained from the license check] was the kind of thing the judge would wish to know." *Archuleta v. Wagner*, 2007 WL 4269016, at *5 (D. Colo. Nov. 28, 2007) (quoting *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000)).

This conclusion is further supported by the fact that the officers sought and obtained the information from the license plate as part of their investigation. If the Altima had been registered to a resident of the home on South Bronco Circle, Agent Kortright undoubtedly would have included that fact in his affidavit to demonstrate a connection between the drug transaction the

6

police officers observed and the home they wished to search. Without an acknowledgment that the license plate was registered to a different house, the affidavit as written, especially with the mistakenly-included statements, misleadingly implies that the police officers were aware of some sort of long-term connection between the suspect and the South Bronco Circle house. Because a reviewing judge would have wanted to know about the car's registration in these circumstances, "such omission can be assumed to be made with reckless disregard for the truth." *Id.* (citing *Bruning v. Pixler*, 949 F.2d 352, 357 (10th Cir. 1991)). The court therefore considers this additional information when it evaluates the affidavit for probable cause.

**B. Lack of Probable Cause in the Amended Affidavit**

Probable cause to issue a search warrant "exists only when the supporting affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Basham*, 268 F.3d at 1203. The Tenth Circuit has also held that "a nexus must exist between suspected criminal activity and the place to be searched." *United States v. Biglow*, 562 F.3d 1272, 1278 (10th Cir. 2009). As a result, the court must determine whether Agent Kortright's affidavit, after the court has stricken the mistakenly copied sentences discussed above and included the information omitted about the vehicle registration, establishes a sufficient nexus between the suspected drug distribution activities and the house on South Bronco Circle.

Under Tenth Circuit law, "[w]hether a sufficient nexus has been established between a defendant's suspected criminal activity and his residence . . . necessarily depends upon the facts of each case." *Id.* at 1279. In some earlier cases, the court held that probable cause "to search a person's residence does not arise based solely upon probable cause that the person is guilty of a

7

crime" and "additional evidence" must link a defendant's home to "the suspected criminal activity." *Id.* (citing *United States v. Rowland*, 145 F.3d 1194, 1204 (10th Cir. 1998)). In other cases, the Tenth Circuit ruled that once probable cause exists that a person is a supplier of illegal drugs, probable cause also exists to search that person's home for contraband and other evidence. *See United States v. Sparks*, 291 F.3d 683, 689-90 (10th Cir. 2002).

The Tenth Circuit harmonized these different approaches by recognizing that the touchstone of the Fourth Amendment is "reasonableness." *Biglow*, 562 F.3d at 1279 (quoting *Samson v. California*, 547 U.S. 843, 855 n. 4 (2006)). As a result, "judges may rely on the opinion of law enforcement officers as to where contraband or other evidence may be kept." *Id.* Similarly, "the nexus between the place to be searched and the evidence sought may be established through normal inferences about the location of evidence." *United States v. Tisdale*, 248 F.3d 964, 971 (10th Cir. 2001). Using this theory of reasonableness for cases involving drug trafficking, the Tenth Circuit has upheld search warrants of a drug supplier's home based on the common sense notion that a drug supplier will keep evidence of his crimes at home. *See United States v. Sanchez*, 555 F.3d 910, 914 (10th Cir. 2009).

But a number of differences distinguish the case that is currently before the court from cases such as *Sparks* and *Sanchez* in which the Tenth Circuit upheld search warrants for a drug supplier's residence. Most importantly, Agent Kortright did not know if the driver of the Nissan Altima lived at the home on South Bronco Circle. As discussed above, the only information the officers were able to discover about the Altima linked the car to a residence in Salt Lake City, not Magna. (Tr. at 34.) The house at South Bronco Circle could easily have belonged to a family member, friend, or romantic partner of the Altima driver. And Agent Kortright did not observe

8

the driver take anything with him into the house that would suggest that the driver had any contraband with him at the time that he left the car. (Tr. at 9-10.)

Moreover, in both *Sparks* and *Sanchez*, the affidavits supporting the warrant to search a suspected drug dealer's residence detailed an extended period of observation of the suspect. *See Sparks*, 291 F.3d at 689 (finding a detective's statement that a particular house was a suspect's residence was reasonable because of information on the suspect's license and because the detective had driven past the house on numerous occasions and seen the suspect there); *Sanchez*, 555 F.3d at 914 (holding that the defendant's presence at multiple drug buys was sufficient evidence to establish that the defendant was likely a drug supplier). Here, the affidavit was based on only one suspected drug transaction and only one instance when the suspect was seen at the house the officers wished to search. The officers found no records that provided any additional link between the house and the Nissan Altima.

The United States argues that the nexus between the house and the possible criminal activity of the driver was enhanced because the affidavit contained information that Chalmes was planning to meet with other individuals in Magna and that his supplier in Magna was bringing in approximately two pounds of methamphetamine from the California area. But there is no evidence that connects this information to the driver of the Nissan Altima or to the house that was searched. From the language in the affidavit, it is not clear if Chalmes called his supplier or someone else to deliver the four ounces of methamphetamine to the parking lot by the Beto's restaurant. It is also unclear whether the driver of the Altima was the same person with whom Chalmes spoke on the phone. These facts provide weak evidence that the house on South Bronco Circle was the same house to which Chalmes was referring when he said that he was

meeting with other individuals in Magna.

The original affidavit stated that the house on South Bronco Circle was under surveillance, thereby providing a strong inference that the residence was the locus of some criminal activity. But when the court strikes the erroneous statements about multiple drug buys and surveillance of the residence and considers the additional information that the Altima was not even registered to the house in Magna, the court finds that the totality of information in the affidavit does not establish a fair probability that contraband or evidence of a crime would be found at the house on South Bronco Circle.[1]

In order to hold that such a probability existed, the court would have to accept a number of tenuous inferences suggested by the United States, including the inference that Chalmes had spoken with his supplier, that the driver of the Nissan Altima either was the supplier or was connected to the supplier, and that, after the suspected drug deal, the driver immediately drove to a house where an expected shipment of drugs either had arrived or would arrive soon.[2] If the court were to adopt these inferences urged by the United States, it would greatly lower the standard needed to demonstrate probable cause to obtain a search warrant. Indeed, under the United States's theory, a police officer could obtain a warrant to search any house entered by someone after they were involved in a suspected drug transaction, provided the officer could

---

[1]The United States asserts that the house was certain to contain at least some evidence—namely, the driver of the Nissan Altima himself. But the United States entered the house on South Bronco Circle with a search warrant, not an arrest warrant. The United States has not cited any cases in its briefing for the proposition that an otherwise invalid search warrant can be used to enter a house simply because a person suspected of criminal activity is inside.

[2]According to the affidavit, Chalmes told the informant that his supplier in Magna "was bringing in approximately two pounds of methampetamine [sic] from the California area" but did not provide any information on whether the drugs had arrived.

draw some tenuous link between the suspect and illegal activity in the area. The court believes that the law requires something more, and the United States fails to point to any case where a search of a residence belonging to an unknown owner was upheld on the basis that a suspect entered that house after an isolated drug buy.

The United States agrees that it generally provides a more substantial showing when it obtains a search warrant for a residence. Agent Kortright testified that officers often conduct surveillance on the home where they think a drug seller lives and set up multiple purchases to determine whether the particular residence is connected to the drug sales. (Tr. at 83-84.) But this procedure was not employed here. Instead, Agent Kortright stated that he acted immediately because of the large quantity of drugs that were supposedly coming in from California. (Tr. at 84.) While the court can understand Agent Kortright's concern that he not "miss out on [the] two pounds," the court must balance the need to bring criminals to justice with the important interests protected by the Fourth Amendment. Even if it sometimes hinders police investigations, the Fourth Amendment prohibits officers from obtaining a warrant unless or until a nexus is established between the place to be searched and the suspected criminal activity.

For the reasons stated above, the court finds that the United States did not establish a sufficient nexus between the house on South Bronco Circle and any illegal activity. As a result, the warrant is invalid.

**C.    The Good Faith Exception**

Even though the court finds that the warrant was not supported by probable cause, the court need not suppress the evidence if the warrant can be saved by the good faith exception discussed in *United States v. Leon*, 468 U.S. 897 (1984). "[W]hen police officers act in good

11

faith and reasonable reliance on a search warrant, the evidence obtained during the search should not be suppressed even if the warrant was lacking in probable cause." *United States v. Lora-Solano*, 330 F.3d 1288, 1294-95 (10th Cir. 2003). The rationale for this exception is that "the exclusionary rule's purpose [is] deterring improper police action, rather than punishing errors made by magistrates." *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005). But the *Leon* good faith exception "does not apply to search warrants granted on the basis of a recklessly or intentionally false affidavit that violates *Franks*." *United States v. Orr*, 864 F.2d 1505, 1508, n. 3 (10th Cir. 1988). Because the search warrant cannot be upheld under *Franks*, the good faith exception does not apply and the evidence seized from the house on South Bronco Circle must be suppressed.

The court does not reach its decision lightly in this case. Reviewing courts are required to pay great deference to a determination of probable cause, *Illinois v. Gates*, 462 U.S. 213, 236 (1983), and "courts should not invalidate . . . warrant[s] in a hypertechnical, rather than a commonsense, manner." *United States v. Ventresca*, 380 U.S. 102, 108 (1965). But where, as here, the affidavit contains such clear and material errors, the court believes that invalidation of the warrant and suppression of the evidence is required by the law.

## CONCLUSION

For the reasons stated above, the Defendants' Motion to Suppress (Dkt. No. 98) is GRANTED and the evidence obtained from the search of the house at South Bronco Circle is SUPPRESSED. The Defendants' Motion in the Alternative for Dismissal (Dkt. No. 98) is DENIED WITHOUT PREJUDICE to give the United States an opportunity to decide how it wishes to proceed with the case.

SO ORDERED this 18th day of March, 2013.

                            BY THE COURT:

                            _____
                            ROBERT J. SHELBY
                            United States District Judge